UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br> v.<br>STATE OF NEVADA, *et al.*,<br><br>       Defendants. | Case No. 3:24-cv-00026-MMD-CLB<br><br>ORDER |

**I. SUMMARY**

The United States brings this civil enforcement action against the State of Nevada and Nevada's Office of the Attorney General ("AG's Office") (collectively, "Nevada"), and the Public Employees' Retirement System of Nevada ("NVPERS"), alleging that Defendants violated the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §§ 4301 *et seq.*, by overcharging certain state employees returning from military service for pension service credits known as "air time." (ECF No. 1 ("Complaint").) NVPERS and Nevada each move to dismiss the Complaint. (ECF Nos. 20 ("NVPERS' Motion")[1], 23 ("Nevada's Motion")[2].) The Court heard oral argument on the Motions. (ECF No. 42 ("Hearing").) For the reasons explained below, the Court finds that the United States fails to state a claim under USERRA and grants the Motions.

///

///

---

[1] The United States responded (ECF No. 31) and NVPERS replied (ECF No. 39).

[2] The United States responded (ECF No. 32) and Nevada replied (ECF No. 38).

## II. BACKGROUND[3]

The United States Department of Justice ("DOJ") brings this suit on behalf of Nevada state employee Charles Lehman and "other similarly-situated [reemployed] servicemembers." (ECF No. 1 at 1-2, 11-13.) *See* 38 U.S.C. §§ 4322, 4323(a)(1) (giving DOJ authority to bring a USERRA enforcement action against a state employer on behalf of a person who has unsuccessfully sought resolution through the Department of Labor complaint process).

Lehman became an attorney at the Nevada AG's Office in August 2013 and is also a commissioned officer in the Nevada National Guard. (ECF No. 1 at 3.) As a public employee, Lehman is a qualified member of NVPERS, a tax-qualified defined benefit pension plan which operates as an independent public agency to "provide pension income to public employees in Nevada, including Nevada's own state employees." (*Id.*) The AG's Office is a participating NVPERS employer. (*Id.*) As set out by Nevada statute, NVPERS allows plan members the option to purchase up to five years of service time in future pension credits (commonly referred to as "air time") after attaining five years of creditable service as a public employee. *See* NRS § 286.300. By statute, the cost to purchase air time credits is actuarially determined by the employee's age and rate of compensation at the time the employee purchases the credits. *See id.* at § 286.3005.

During the period between May 15, 2017, and December 8, 2020, Lehman was called to active duty with the National Guard, taking military leave from his civilian position at the AG's Office. (ECF No. 1 at 4.) In 2020, Lehman requested reemployment under USERRA and resumed his work as an attorney at the AG's Office. (*Id.*) USERRA provides broad protections to returning servicemembers and specifically mandates that a covered person "shall be treated as not having incurred a break in service with the employer or employers maintaining [a pension] plan by reason of such person's period

---

[3]The following facts are adapted from the Complaint.

or periods of service in the uniformed services." 38 U.S.C. § 4318(a)(2)(A). Upon reemployment, Lehman "immediately requested credit for his military service time," although the AG's Office did not update Lehman's personnel records to properly reflect his active duty leave until April 2021. (ECF No. 1 at 4-5.) After receipt of Lehman's records in April 2021, "NVPERS recognized that for pension purposes he did not have a break in service [under USERRA]." (*Id.* at 6.)

On April 26, 2021, shortly after his records were updated to credit his military service, Lehman inquired about purchasing pension air time as an NVPERS member. (*Id.*) Had he remained continuously employed at the AG's Office, Lehman would have passed the five-year tenure mark qualifying him to buy air time under NRS § 286.300 on August 26, 2018. (*Id.*) But Lehman could not purchase air time in 2018, or for the following two years, while he was away on military leave. (*Id.*) In response to Lehman's 2021 inquiry, NVPERS recognized that Lehman was eligible to purchase air time, counting his period of active duty toward the five-year threshold given his reemployment. (*Id.*) NVPERS informed Lehman, however, that he would need to buy any desired air time at the current April 2021 actuarial rate, calculated based on his age and pay at that time—a total cost of $139,391 for five years of air time credits. (*Id.*) If Lehman had been able to purchase air time several years earlier, at the five-year mark in 2018, the actuarial cost reflecting his younger age and lower salary would have been $101,184.40 – a difference of $38,207. (*Id.* at 4, 10.) Lehman filed a USERRA complaint with the Department of Labor ("DOL") under 38 U.S.C. § 4322(a)(1), alleging that he should have been offered the lower 2018 air time price. (ECF No. 1 at 6.) After the DOL Veterans Employment and Training Service ("VETS") investigated Lehman's complaint and failed to reach a resolution, VETS referred the matter to DOJ. (*Id.* at 7.)

///

///

///

In the Complaint, DOJ alleges that Nevada and NVPERS violated USERRA by charging Lehman and other similarly-situated individuals'[4] an air time price which exceeded the amount returning service-members would have been permitted or required to pay had they remained continuously employed. (*Id.* at 8, 11.) The United States requests declaratory and injunctive relief as well as damages, asking the Court to declare that NVPERS' policy regarding the calculation of air time costs for servicemembers who pass their five-year tenure while on military leave is in violation of USERRA, to order Defendants to award Lehman and similarly-situated individuals air time pension credits at the lower rate, and to enjoin Nevada and NVPERS from their "practice of overcharging" returning servicemembers. (*Id.* at 12-13.)

## III.    DISCUSSION

Nevada and NVPERS each move to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 20, 23.) The Court will address the Motions together because Defendants' central arguments overlap, and because the dispute rests primarily on a question of law: whether USERRA requires state employers to offer reemployed servicemembers the option to purchase air time at the lower actuarial rate which would have been available at their five-year tenure mark had they not taken military leave.[5] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)

---

[4]The United States includes specific allegations about a second attorney, Jeff Hoppe, who was hired by the AG's Office in 2011, later transferring to the Washoe County District Attorney's Office without a break in NVPERS covered service. (ECF No. 1 at 7-8.) Hoppe served on active duty with the Army National Guard from January to December 2016, and would have passed his five-year tenure in July 2016. (*Id.*) The District Attorney's Office reemployed Hoppe under USERRA, but failed to initially recognize his military time. (*Id.*) Hoppe ultimately had to wait until April 2017 to purchase air time credits because of NVPERS' delay. (*Id.*)

[5]Disposition of the Motions is not dependent on distinctions between NVPERS (as a pension plan) and Nevada (as a qualifying employer), and the Court does not address NVPERS' arguments to the extent they evaluate this distinction under USERRA. In addition, the Court does not address the implications of Defendants' alleged delays in properly crediting Lehman and Hoppe's military time *after* reemployment, given the United States' contentions in its responsive filings. Defendants argue in their Motions that any delays in crediting military service were minimal, did not constitute separate violations of USERRA, and did not ultimately alter the air time price

(holding that while a district court must accept as true all well-pled factual allegations in a complaint, legal conclusions are not entitled to the assumption of truth); *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990) (dismissal is proper under Rule 12(b)(6) when a complaint exhibits the "lack of a cognizable legal theory").

Defendants argue that NVPERS appropriately credited Lehman's 3.5 years of military service by allowing him to purchase air time—a wholly elective pension benefit—at the 2021 rate. (ECF Nos. 20 at 2, 23 at 2-7.) They contend that the United States' Complaint puts forward an unsupported and novel interpretation of USERRA's provision on pension benefits, 38 U.S.C. § 4318, which would require public employers to offer returning service members an unfairly discounted rate not available to other Nevada employees. (*Id.*) In opposition, the United States argues that USERRA's protections must be interpreted broadly to cover air time, that USERRA trumps contrary state law, and that treating a servicemember "as if" they had been continuously employed mandates a retroactive rate. (ECF Nos. 31, 32.)

The Court first examines USERRA's overarching structure according to principals of statutory construction and then turns to Section 4318, the provision primarily cited by the United States. *See Deutsche Bank Nat'l Trust Co. v. Old Republic Title Ins. Grp., Inc.*, 532 F. Supp. 3d 1004, 1011 (D. Nev. 2021). While USERRA protections extend to a broad range of reemployment rights and benefits, the statute makes important distinctions between categories of covered rights and benefits. The Court finds that while the vested *right* to purchase pension air time is protected under USERRA, air time credits themselves are not protected under Section 4318. Accordingly, the Court grants Defendants' Motions and dismisses the Complaint.

///

---

available to Lehman. (ECF No. 20 at 11-12.) In response, the United States concedes that while Defendants' delays caused prejudice, the delays are not alleged as a separate violation of USERRA—the Complaint centers on Defendants' failure to offer the actuarial rate available at the five-year tenure mark. (ECF No. 31 at 15.) Thus, because the United States does not appear to assert that a separate or additional legal basis for relief exists as to the post-reemployment delays, the Court will not consider the related arguments in this order.

### A. Structure of USERRA

Enacted in 1994, USERRA is a non-discrimination statute designed to encourage noncareer military service and to minimize its disadvantages and disruption to servicemembers returning to civilian life. *See* 38 U.S.C. § 4301(a) (setting out the purposes of USERRA, which include to "encourage noncareer service in the uniformed services," to "minimize the disruption to the lives of persons performing service . . . as well as to their employers, their fellow employees, and their communities, by providing for . . .prompt reemployment" and to "prohibit discrimination" against persons serving in the military).

USERRA imposes obligations on public and private employers of returning servicemembers as to a range of reemployment rights and benefits, "contain[ing] 'the most expansive protection to servicemembers yet enacted.'" *Clarkson v. Alaska Airlines, Inc.*, 59 F.4th 424, 429 (9th Cir. 2023) (quoting *Travers v. Fed. Express Corp.*, 8 F.4th 198, 201 (3d Cir. 2021)). Federal reemployment rights are "to be liberally construed for the benefit of those who left private life to serve their country." *Ziober v. BLB Res., Inc.*, 839 F.3d 814, 819 (9th Cir. 2016) (quoting *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946)). Indeed, USERRA's definition of "benefit," "benefit of employment," or "rights and benefits" is notably broad: Benefits include "the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice." 38 U.S.C. § 4303(2). This definition expressly encompasses "rights and benefits under a pension plan," among other kinds of employment advantages. *See id.* (providing additional examples, including advantages arising in relation to, *inter alia*, "a health plan . . . insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours"). *See also Scanlan v. Am. Airlines Grp., Inc.*, 384 F. Supp. 3d 520, 526 (E.D. Pa. 2019) (noting that USERRA's introductory definition of

rights and benefits is expansive and the examples in Section 4303(2) are illustrative but not exhaustive).

USERRA "supersedes any State law" or any "contract, agreement, policy, plan, practice or other matter that reduces, limits, or eliminates in any matter any right or benefit provided [by the federal statute]." 38 U.S.C. § 4302(b). *See Wriggelsworth v. Brumbaugh*, 129 F. Supp. 2d 1106, 1112 (W.D. Mich. 2001) ("Congress intended a *uniform* set of protections available to returning veterans in the several states and expressly forbade modification of these protections by . . . state law.") (emphasis in original). USERRA does not, however, supersede any state law or policy "that establishes a right or benefit that is more beneficial to, or is in addition to, a right or benefit provided for such person in this chapter." 38 U.S.C. § 4302(a).

While USERRA must be liberally construed, the statute does not impose the same obligations on employers across all categories of covered benefits. Section 4316, which outlines USERRA's general structure of rights, benefits, and obligations, distinguishes between *seniority*-based benefits—providing that entitlement is determined by the seniority a reemployed person had when they commenced military service plus additional seniority they "would have attained . . . had [they] remained continuously employed," 38 U.S.C. § 4316(a)—and *non-seniority*-based benefits— where entitlement depends instead on whether such benefits are "generally provided by the employer . . . to employees having similar seniority, status, and pay who are on furlough or leave of absence," *id.* at § 4316(b)(1)(B). And as particularly relevant to the instant action, Section 4316(b)(6) separately provides that "[t]he entitlement of a person to a right or benefit under an employee pension benefit plan is provided for under section 4318." *Id.* at § 4316(b)(6).

Because an analysis of appropriate USERRA protections varies based on the classification of the right or benefit at issue, the Court must be precise in evaluating air time within the categories of covered benefits, while also bearing in mind the statute's breadth. Nevada law provides that after five years of service, a current Nevada public

employee who is a member of NVPERS becomes eligible to purchase up to five years of additional pension air time service credit at the actuarial rate. *See* NRS § 286.300(2) ("[An NVPERS member] who has 5 years of creditable service may . . . purchase up to 5 years of [additional] service . . . [t]he member must pay the full actuarial cost of the service as determined by an actuary of [NVPERS]."); *id.* at § 286.300(5) ("A person who becomes a member of the System for the first time on or after January 1, 2000, may . . . purchase creditable service pursuant to subsection [2] . . . only if, at the time of the purchase, the person is employed by a participating public employer in a position eligible for membership in the System."); *id.* at § 286.017 (defining "actuarial computation" as "the computation based on benefits earned and life expectancy of member and beneficiary to determine necessary reduction of benefits under retirement options or to determine cost of purchasing additional benefits as provided in this chapter"). After passing the initial five-year threshold, an employee's decision to purchase air time at the actuarial rate is discretionary, and does not depend on years in service. *See id.* at § 286.300. This distinguishes air time from NVPERS members' separate statutory right to purchase "all previous *creditable service* performed with the member's present employing agency if that service was performed before the enrollment of the member's agency in the System." *Id.* at § 286.300(1) (emphasis added).

Notably, Lehman's earlier DOL complaint process demonstrates agency uncertainty about whether air time is properly classified as a pension benefit under Section 4318, a seniority benefit, or a non-seniority benefit for purposes of applying USERRA. Neither USERRA itself nor DOL rules contain guidance specific to air time, and VETS cited to multiple separate regulations, concluding that "NVPERS' denial of Mr. Lehman's right to purchase air time at a rate he would have incurred in August 2018 is a protected right under USERRA as a seniority benefit (20 C.F.R. §§1002.210-213), a non-seniority benefit (1002.149-150), and/or a pension benefit (1002.262)". (ECF No. 20-2 at 2.) *See also* Uniformed Services Employment and Reemployment Rights Act of

1994, as amended, 70 Fed. Reg. 75,246, 75,285 (Dec. 19, 2005) ("DOL Final Rule") (noting that USERRA covers only "certain aspects of the reemployed service member's pension plan rights" and where USERRA does not "provid[e] specific guidance . . . State laws governing the establishment and operation of pension plans . . . continue to apply in the context of providing benefits under USERRA"). However, in the Complaint, as well as in response to Defendants' Motions and at the Hearing, the United States bases its claims primarily on Section 4318, arguing that air time is protected under that Section's specific requirements for pensions, without suggesting that seniority or non-seniority benefit protections provided elsewhere in USERRA might apply separately or in addition. (ECF Nos. 1, 31, 32, 42.) The Court thus focuses its review on the scope of Section 4318.

### B.    Section 4318

The Court finds that air time is not an accrued pension benefit earned for service within the meaning of Section 4318 of USERRA. The Court further finds that even if air time falls within the scope of Section 4318, Defendants did not violate the restrictions therein because they did not require a contribution which "exceed[s] the amount [Lehman and similarly-situated individuals] would have been permitted or required to contribute had [they] remained continuously employed." 38 U.S.C. § 4318(b)(2).

Section 4318 covers reemployment rights arising under employee pension benefit plans, including "right[s] provided under any Federal or State law governing pension benefits for governmental employees." *Id.* at § 4318(a)(1)(A). The Section provides that "[a] person reemployed" after military service "shall be *treated as not having incurred a break in service* with the employer or employers maintaining the [pension] plan by reason of such person's period or periods of service in the uniformed services." *Id.* at § 4318(a)(2)(A) (emphasis added). "[U]pon reemployment," a period of military service "shall . . . be deemed to constitute service with the employer . . . for the purpose of determining the nonforfeitability of the person's accrued benefits and *for the purpose of determining the accrual of benefits under the plan.*" *Id.* at § 4318(a)(2)(B)

(emphasis added). Section 4318(b)(2) further provides that, when accrued benefits are "contingent on the making of, or derived from, employee contributions or elective deferrals," a reemployed individual must make such contributions or deferrals to receive benefits, but "[n]o such payment may exceed the amount the person would have been permitted or required to contribute had the person remained continuously employed by the employer throughout the period of service described in subsection (a)(2)(B)." *Id.* at § 4318(b)(2).

The United States asserts that air time is covered under Section 4318(b)(2) as a statutory pension right "contingent on the making of . . . employee contributions," and that Defendants thus overcharged Lehman by requiring him to pay the 2021 price because that price "exceed[s] the amount [he] would have been permitted or required to contribute had [he] remained continuously employed." (ECF Nos. 1 at 8, 11, 31, 32.) Lehman should be permitted, the United States argues, to pay the 2018 actuarial price. (*Id.*) But Section 4318 does not apply to mandate the government's outcome.

To start, as NVPERS emphasizes in its Motion, Section 4318(b) applies to benefits which *accrue* in relation to a pension plan. (ECF No. 20 at 7-8.) While "accrued benefit" is not directly defined in USERRA, the plain meaning of the term—and its meaning in context—implies accumulation over time. As a baseline, it is helpful to consider how most core types of pension benefit accrue: employers and/or employees contribute to a pension plan over years of service, and employees are later entitled to a benefit in the form of payments after retirement—a benefit which has accumulated over time, often according to a vesting schedule. This kind of foundational pension benefit is "proportional to service," accrues with relative predictability over time, and may also be characterized as a form of deferred compensation. *See Cal Fire Loc. 2881 v. California Pub. Employees' Ret. Sys.*, 435 P.3d 433, 448-49 (Cal. 2019)[6] ("Pension benefits, the

---

[6]Nevada's Motion includes an extensive discussion of the "California Rule" of pensions, citing to the California Supreme Court's decision in *Cal Fire*. (ECF No. 23 at 10-11.) Nevada argues that under the California Rule, air time should be treated as a

1  classic example of deferred compensation, flow directly from a public employee's
2  service, and their magnitude is roughly proportional to the time of that service. Just as
3  each month of public service earn an employee a month's cash compensation, it also
4  earns him or her a slightly greater benefit upon retirement."). *Cf.* 29 U.S.C. § 1002(23)
5  (defining an "accrued benefit" under the Employee Retirement Income Security Act as
6  "the individual's accrued benefit determined under the plan . . . expressed in the form of
7  an annual benefit commencing at normal retirement age").

8        Air time does not accrue as core pension benefits do. Although an employee may
9  only purchase air time after five years of service, the decision to make the purchase
10 after that point is wholly discretionary. *See* NRS § 286.300. The air time an employee
11 elects to buy to supplement their pension does not function like compensation, nor does
12 it predictably accrue over time "by dint of time-in-service," as DOJ argues. (ECF No. 31
13 at 11.) *See Cal Fire*, 435 P.3d at 448-49 ("[An] eligible employee's service was entirely
14 irrelevant to his or her exercise of the opportunity [to purchase additional service time
15 credits] . . . [o]nce the five-year qualification period was served, further public
16 employment did not increase the amount of ARS credit that an employee could
17 purchase or in any other way affect his or her opportunity."). Air time is thus "untethered
18 to actual service." *Cal Fire*, 435 P.3d at 439. *See also State of California v. United*
19 *States Dep't of Lab.*, 306 F. Supp. 3d 1180, 1183 (E.D. Cal. 2018) ("Airtime is a time
20 credit that adds fictitious years to the true years an employee has worked before retiring
21 . . . ."); *Cf. Moss v. United Airlines, Inc.*, 20 F.4th 375, 383-84 (7th Cir. 2021) (quoting
22 *Ala. Power Co. v. Davis*, 431 U.S. 581, 588-89 (1977)) (analyzing whether employee
23 sick time would have "accrued, with reasonable certainty, had the veteran been
24 continuously employed" to determine whether sick time should be classified as a

---

25 "wholly optional fringe benefit" with no protection under USERRA. (*Id.*) *Cal Fire* primarily
26 addresses the distinct question of whether California's air-time equivalent is a contractual or statutory right, and the case does not directly apply to the facts in the instant action. The Court thus finds Nevada's argument that the California Rule entirely
27 removes air time from USERRA's purview unpersuasive. However, the Court considers the *Cal Fire* decision to the extent it provides relevant discussion of the nature of air
28 time compared to other kinds of pension benefits. *See* 435 P.3d at 448-49.

seniority-based benefit). In fact, unlike most "advantages of employment," which increase with years of service and age, air time becomes increasingly expensive with age, as the actuarial rate accounts for an employee's proximity to retirement and compensation. *See* 38 U.S.C. § 4303(2) (defining USERRA-covered benefits as an "advantage," "gain," "status," etc.) And while Section 4318 requires that employers treat reemployed individuals as having not incurred a break in service for pension purposes, *see* 38 U.S.C. § 4318(a)(2)(A), an employee in Lehman's place who had not taken a break in service might with equal or greater likelihood never have elected to purchase air time during that identified time period—or they might have purchased air time at the December 2018 rate, or the August 2019 rate, or at any other time.[7]

The distinction between the right to purchase air time pension credits and the pension credits themselves is important here. The United States acknowledges as much, arguing in response to NVPERS' motion that "[e]ven if the pension credits themselves are 'untethered to actual service,' the right to purchase credits assuredly is" (ECF No. 31 at 12), but a closer analysis of this distinction ultimately demonstrates the flaws in DOJ's reasoning. The *right* to purchase air time may functionally vest after five years—and in this general sense, the right might indeed be said to accrue. But *substantive* air time credits to an individual pension do not accrue at the five-year mark, nor at any other time, because such credits continue to depend on an affirmative act of discretion by an employee who does not obtain any price advantage through further

---

[7]Differentiating between accrued and unaccrued benefits is important in practice. When a servicemember returns to civilian employment, calculation of accrued pension benefits covered under Section 4318 generally involves limited assumptions about the discretion on the part of employer or employee; the employer may be required to estimate the compensation the employee would have received during their military service, but where there is a predictable accumulation of benefits or contributions, there is no outsized reliance on presumptions about the employee's intent during their military leave. Considering air time and the facts of this case, by contrast, there is no clear reason why the 2018 rate is more appropriate than any other rate a continuously-employed individual could have selected during the relevant period.

years of employment.[8]  Notably, courts regularly consider distinctions between accrual rates and accruals themselves in analyzing other kinds of benefits under USERRA. For example, a servicemember may be entitled to an increased rate of vacation-time accrual upon reemployment, but that does not necessarily mean they return to a bank of days off.[9]

Here, Defendants treated Lehman as eligible to purchase air time, counting his military service towards his five-year threshold upon reemployment. *See* 38 U.S.C. § 4318(a)(2)(B) (time "served by a person in the uniformed services shall . . . constitute service . . . for the purpose of determining the accrual of benefits under the plan"). By doing so, Defendants appropriately recognized that Lehman's *right* to purchase air time had vested or accrued. Defendants were not required to go further by freezing time part way through Lehman's service at the lower August 2018 rate, because only the right to purchase air time—not the substantive air time credits themselves—had accrued at

---

[8]Another way to view this issue is to consider the increasing *rate* to purchase air time under an accrual analysis. Because the actuarial rate increases with age, an employee could more accurately be described as accruing a *detriment* in the form of a higher rate over time, rather than as accruing a benefit or advantage of employment. Viewed this way, the United States essentially argues against accrual of the actuarial rate for reemployed servicemembers.

[9]Although the Court does not analyze air time as a seniority- or non-seniority based benefit in this order, courts' treatment of vacation time and sick leave within the seniority- and non-seniority language of USERRA provides a useful parallel. For example, while the rate of accrual of vacation days is generally considered an accrued "perquisite of seniority," vacation time itself is generally considered a non-seniority-based benefit: it is a form of short-term compensation rather than a reward for length of service, and there is a lack of reasonable certainty as to whether the employee would have attained the benefit. *See, e.g.*, *Sorenson v. Delta Air Lines, Inc.*, 667 F. Supp. 3d 1289, 1312-14 (N.D. Ga. 2023), reconsideration denied sub nom. *Smith v. Delta Air Lines, Inc.*, Case No. 1:17-CV-00541-ELR, 2023 WL 5420250 (N.D. Ga. July 24, 2023), and appeal dismissed, Case No. 23-12698, 2024 WL 36572 (11th Cir. Jan. 3, 2024). *See also Foster v. Dravo Corp.*, 420 U.S. 92 (1975). The analysis of vacation day accruals thus depends on whether the employer offers the benefit to individuals on other kinds of leave, because "USERRA entitled employees on [military leave] to the same non-seniority-based benefits afforded to 'employees having similar seniority, status, and pay who are on furlough or leave[.]'" *Sorenson*, 667 F. Supp. 3d at 1312-14 (citing 38 U.S.C. § 4316(b)(1)(B)). *See also* 20 C.F.R. § 1002.150(c) ("As a general matter, accrual of vacation leave is considered to be a non-seniority benefit that must be provided by an employer to an employee on a [MLOA] only if the employer provides that benefit to similarly situated employees on comparable leaves of absence.").

reemployment. USERRA does not impose a fictitious assumption that a servicemembers would use their discretion at the exact moment when they become eligible to do so.

The Court further finds that even if air time qualifies as an accrued benefit, the United States' arguments still fall short. DOJ asserts that air time is a benefit contingent upon employee contributions under Section 4318(b)(2), and that USERRA thus provides servicemembers a period of time after reemployment to make up their contribution at the retroactive rate. *See id.* at § 4318(b)(2) (providing that a reemployed person must make up their contributions over a payment period which begins at reemployment, the duration of which "is three times the period of the person's service in the uniformed services . . . not to exceed five years"). Section 4318(b)(2) prohibits employers from imposing a contribution payment which "exceed[s] the amount the person would have been permitted or required to contribute had [they] remained continuously employed." *Id.* But here, assuming that a one-time purchase of air time is a "contribution" within the meaning of subsection (b)(2)[10], Defendants did not charge an amount that exceeds the permitted or required contribution. Importantly, while USERRA requires treating servicemembers as if they had been continuously employed for pension purposes, USERRA rights nevertheless vest "upon reemployment." *Id.* at §

---

[10]The Court notes that provisions of Section 4318(b) describing employer and employee contributions clearly interact with definitions and distinctions in the Internal Revenue Code, and the parties do not address if and how a one-time purchase of air time qualifies as a "contribution" within the meaning of the statute. *See, e.g.*, 38 U.S.C. § 4318(b)(2) (citing to the definition of elective deferrals in the Internal Revenue Code); 26 U.S.C. § 414(u) (providing, as part of the Internal Revenue Code, certain "special rules relating to veteran's reemployment rights under USERRA," including that certain retroactive adjustments are not required, and that no provision of USERRA shall be construed as requiring "any crediting of earnings to an employee with respect to any contribution before such contribution is actually made"); *id.* at § 414(i) ("A defined contribution plan [is a] plan which provides for an individual account for each participant and for benefits based solely on the amount contributed to the participant's account."); *id.* at § 414(j) ("A defined benefit plan [is] any plan which is not a defined contribution plan."). *See also* Contribution Rates, NVPERS, https://www.nvpers.org/employers/contribution-rates (providing that the contribution rate for regular members of employer paid plans is "33.50% Shared equally between employer and employee" and for employee/employer paid plans is 17.5%).

14

4318(a)(2)(B). *See also, e.g.*, 20 C.F.R. § 1002.262 (employers not required to make pension contributions until a service member employee returns to work). Lehman was reemployed in 2020. Had Lehman remained at the AG's Office continuously until 2020, the maximum permissible contribution Defendants could have imposed for air time in 2020 would be the actuarially-calculated price at that time—the price Lehman was in fact offered (without considering Defendants' additional delays). Because Defendants did not exceed that price, they did not violate Section 4318(b)(2).

DOJ also points to Section 4318(b)(3)(A), which provides that "[f]or purposes of computing . . . the employee's contributions . . . the employee's *compensation* during the period of service . . . shall be computed . . . at the rate the employee would have received but for the period of service" (emphasis added). But subsection (b)(3) relates to the computation of past compensation as necessary to *calculate benefits which have accrued* at the moment of reemployment. *See id*. It does not require, as DOJ contends, that employers offer returning servicemembers a past actuarial rate to make the discretionary purchase of an unaccrued benefit, especially because a past actuarial rate is based not just on compensation but also the servicemember's younger *age*.

In sum, Defendants were obligated under USERRA to treat Lehman like any other 2020 employee who had remained continuously employed until that time—Defendants were not obligated to treat him like a 2018 employee. As Defendants emphasize, to do so would create a protection not available to any other Nevada employees, effectively giving returning servicemembers a set rate which does not accurately reflect the time value of money or advancing age and increasing compensation, elements of the actuarial rate carefully calibrated to preserve the integrity of the retirement system. *See O'Hara v. State ex rel. Pub. Emps. Ret. Bd*., 764 P.2d 489, 490 (Nev. 1988) ("The retirement program is based upon actuarial principles and its rules must be strictly enforced to ensure that funds will be available in the future.").

Finally, the United States' assertions about the general nature of USERRA do not undermine the analysis above. DOJ emphasizes that "USERRA's benefits are broad, preempt State law or policy to the contrary, and must be broadly construed." (ECF No. 31 at 5-6.) But as the Court has already noted, USERRA is fundamentally an anti-discrimination statute: its breadth and preemption power do not allow—let alone require—the Court to interpret the statute's reach to extend beyond its plain language. *See, e.g.*, *McCarrin v. Pollera*, Case No. CV 17-1691, 2019 WL 4857464, at *6 (E.D. Pa. Sept. 30, 2019) ("USERRA affords a veteran no 'extra' benefits for having served in the military; s/he gets only what s/he would have gotten had s/he remained on the job, rather than serving"); 38 U.S.C. § 4302(a); *Foster v. Washoe County*, 3:18-cv-00438-MMD-CBC, ECF No. 17 at 5 n.3, 2019 WL 13470571 at *3, n.3 (D. Nev. October 31, 2019) (unpublished) ("Extending protections under a federal statute is within the purview of Congress—not this Court.").

Accordingly, the Court concludes that air time credits are not protected under Section 4318 of USERRA. The Court grants Defendants' Motions on that basis and dismisses the Complaint for failure to state a claim under Rule 12(b)(6).

## IV.  CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motions before the Court.

It is therefore ordered that the Public Employees' Retirement System of Nevada's motion to dismiss (ECF No. 20) is granted.

It is further ordered that the State of Nevada and Office of the Attorney General's motion to dismiss (ECF No. 23) is granted.

///

///

///

It is further ordered that the United States' Complaint (ECF No. 1) is dismissed.

The Clerk of Court is directed to enter judgment accordingly and close this case.

DATED THIS 16th Day of December 2024.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE